IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOSEPH DAVIS, JR.**                                                                       **PLAINTIFF**

**v.**                                                         **Civil No. 1:10-cv-23-HSO-JMR**

**BANK OF AMERICA CORPORATION, et al.**                 **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is the Motion for Summary Judgment [125], filed by Defendants Bank of America Corporation ("BAC"), and Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("BANA"). Plaintiff Joseph Davis Jr., has filed a Response [130], and Defendants a Reply [132]. After consideration of the parties' submissions, the record, the relevant legal authorities, and for the reasons discussed below, the Court finds that Defendants' Motion for Summary Judgment [125], should be granted.

I. BACKGROUND

Plaintiff Joseph Davis, Jr., proceeding *pro se*, filed his Complaint, Amended Complaint, and Second Amended Complaint in this matter on January 13, 2010, April 14, 2010, and October 25, 2011, respectively. He asserted claims against twenty-nine defendants. All defendants have been dismissed with the exception of BAC, BANA, and Coldata, Inc. Plaintiff has obtained a Clerk's Entry of Default

against Coldata, Inc. Clerk's Entry of Default [61]. In his Complaint, Plaintiff alleges that he suffered damages due to an allegedly unlawful employment termination and garnishment. Pl.'s Sec. Am. Compl. [82] at p. 8. He further asserts that he has been damaged by allegedly illegal practices committed by BAC and BANA, in connection with the servicing of his home mortgage loan. *Id.* at p. 7. Plaintiff acknowledges that his claims against BAC and BANA are limited to those alleging "fraudulent mortgage loan practices and [] gross negligence in the servicing of his Home Mortgage Loan." Pl.'s Resp. [130] at p. 15. Moreover, his claims alleging unlawful garnishment and employment termination are barred by all applicable statutes of limitation. Order [35] at p. 13.

On January 17, 2006, Plaintiff and Gilda H. Davis executed a promissory note in favor of Countrywide Home Loans, Inc. ("Countrywide"), in the amount of $103,995.00, to purchase a single family home in Biloxi, Mississippi (the "Property). Deed of Trust [125-2] at p. 2, Ex. A to Defs.' Mot. for Summ. J. [125]. The Note was secured by a Deed of Trust, executed the same day, pledging the Property as security for the loan. *Id.* In 2008, BANA acquired Countrywide, and BANA is the current servicer of Plaintiff's home loan. Decl. of Ronald Odeyemi, Ex. 1 [125-1] to Defs.' Mot. for Summ. J. [125]. Plaintiff alleges that BAC and BANA illegally paid for insurance on the Property from his escrow account, wrongfully "force placed" hazard insurance on the Property, unlawfully reported his loan as delinquent to credit reporting agencies, failed to timely apply payments

to his loan balance, and failed to provide him with loan history documentation that he requested.  Pl.'s Sec. Am. Compl. [82] at p. 7.  BAC and BANA's Motion for Summary Judgment [125], which addresses these claims, is now before the Court.

## II. DISCUSSION

A.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).  However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

B.   Plaintiff's Claims Against BAC

BANA is the servicer of Plaintiff's home mortgage loan. Plaintiff has submitted no evidence that BAC had any involvement in the servicing of his home mortgage loan. His claims against BAC should be dismissed.

C.   Plaintiff's Claims Against BANA

    1.   42 U.S.C. § 1983 Claims

Plaintiff contends that BANA has violated his rights under the First,

Fourth, Fifth, Sixth, Seventh, Ninth, and Fourteenth Amendments to the Constitution. Pl.'s Sec. Am. Compl. [82] at p. 3. He seeks relief for these violations pursuant to 42 U.S.C. § 1983. To obtain relief under § 1983, a plaintiff must prove that he was deprived of a right under the Constitution or the laws of the United States, and that the person depriving him of that right acted under color of state law. *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. and Urban Dev.,* 980 F.2d 1043, 1050 (5th Cir.), *cert. denied,* 510 U.S. 820 (1993). It is beyond dispute that BANA is not a state actor. *See Douglas v. Doe,* No. 02-21213, 73 Fed. App'x 79, *1 (5th Cir. 2003). Plaintiff has submitted no evidence that BANA was acting "under color of state law," nor has he alleged that BANA conspired with a state actor to deprive him of a constitutional right. *Id.* Plaintiff's § 1983 claims should be dismissed.

    2.    <u>Claim that BANA Wrongfully Paid for Insurance from Escrow Account</u>

Plaintiff has submitted a letter dated February 25, 2010, from BANA addressed to him, wherein BANA represents that it received Plaintiff's new home insurance policy on the Property from the carrier, American Western Home Insurance. Letter [130-5], Ex. E to Pl.'s Resp. [130]. The letter notifies Plaintiff that prior to receiving the new policy, it received a renewal notice from his previous carrier, which it paid from his escrow account. *Id.* The letter states that in order to prevent the new American Western policy from being cancelled, it also paid the premium for it from Plaintiff's escrow account. *Id.* The letter provides:

> Please contact your previous insurance company to request that your policy be cancelled and that a refund for the premium paid be returned to [BANA]. If we do not receive the premium refund from your previous insurance carrier, your escrow/impound account may experience a shortage which will cause your monthly payments to increase.

*Id.*

Plaintiff contends that he sent a certified letter to BANA requesting that it not pay his previous home insurance carrier from his escrow account, and that BANA intentionally and illegally paid his previous carrier in retaliation against him for filing this lawsuit. Pl.'s Resp. [130] at p. 6. BANA acknowledges that its payment of both premiums "may have resulted in a prior deficiency in [Plaintiff's] escrow account." Defs.' Mem. [126] in Supp. of Mot. for Summ. J. at p. 13. In his Response, Plaintiff raises a new argument that BANA also should not have paid the State of Mississippi for wind pool insurance covering the Property from his escrow account, because he sent BANA a certified letter stating that he would directly pay the State of Mississippi for this insurance. Pl.'s Resp. [130] at p. 10.[1]

The Deed of Trust executed by Plaintiff provides that the borrower is required to continuously insure the Property against loss from certain enumerated hazards. Deed of Trust [125-2] at p. 5. It states that premiums for all required

---

[1] Because Plaintiff's claim regarding BANA's payment of wind pool insurance premiums from his escrow account was not pleaded in his Complaint, it is not properly before the Court. Nevertheless, this claim would fail for the same reasons as his claim regarding BANA's payment of home insurance premiums from his escrow account.

insurance are to be paid by the borrower to the lender. *Id.* at p. 4. The lender, in turn, pays the insurance premiums from the borrower's escrow account. *Id.* The Deed of Trust's requirement that the borrower directly pay the lender for required insurance may be waived by the lender, but a waiver must be in writing. *Id.*

The terms of the Deed of Trust allowed BANA to pay the premiums for hazard insurance on the Property from Plaintiff's escrow account. The Deed of Trust does not provide that the borrower can alter the terms by sending the lender a certified letter. BANA did not violate the terms of the Deed of Trust by paying hazard insurance premiums on the Property from Plaintiff's escrow account. BANA is entitled to summary judgment on this claim.

      3.      <u>Claim that BANA Wrongfully "Force Plac[ed]" Hazard Insurance on the Property</u>

Plaintiff claims that BANA unlawfully "force plac[ed]" hazard insurance on the Property. Pl.'s Sec. Am. Compl. [82] at p. 7. The Deed of Trust provides that if the borrower fails to maintain hazard insurance, "Lender may obtain insurance coverage, at the Lender's option and Borrower's expense . . . ." Deed of Trust [125-2] at p. 5. Plaintiff has submitted documentation that Lexington Insurance Company, his chosen hazard insurance carrier, cancelled his hazard insurance coverage effective April 10, 2011. Cancellation Endorsement [130-1], Ex. A to Pl.'s Resp. [130]. Plaintiff testified in his deposition that BANA subsequently sent him a threatening letter indicating that it intended to obtain hazard insurance on the Property if Plaintiff did not provide proof of new insurance coverage. Dep. of

Joseph Davis, Jr. [125-6] at pp. 29-31, Ex. 2 to Defs.' Mot. for Summ. J. [125].

Plaintiff has provided no evidence that BANA subsequently obtained hazard insurance on the Property. His deposition testimony instead indicates that he eventually supplied BANA with proof of new insurance. *Id.* at p. 31. BANA has submitted the Declaration of Ronald Odeyemi, AVP of the Operations Team Lead of BANA. Decl. of Ronald Odeyemi [125-1]. Mr. Odeyemi avers that he reviewed the escrow and insurance records associated with Plaintiff's mortgage loan and found no evidence that BANA obtained or purchased any lender placed insurance. *Id.* at p. 3. Even if BANA had, however, it appears that it had the legal right to do so, pursuant to the terms of the Deed of Trust. Plaintiff's claim that BANA unlawfully "force plac[ed]" hazard insurance on the Property should be dismissed.

  4. <u>Claim that BANA Unlawfully Reported Mortgage Loan Account as Delinquent</u>

Plaintiff contends that he never paid his mortgage late, and that BANA nevertheless unlawfully reported his mortgage loan account as delinquent to credit agencies, causing him significant damages. Pl.'s Sec. Am. Compl. [82] at p. 7. Both parties agree that military allotments from Plaintiff's military retirement are paid directly to BANA towards Plaintiff's mortgage loan on a monthly basis. Pl.'s Resp. [130] at p. 6; Defs.' Mem. [126] in Supp. of Mot. for Summ. J. at p. 13. Plaintiff contends that the military allotment payments "were in the right amount [and] received on the 3rd (third of the month)." Pl.'s Resp. [130].

The loan history for Plaintiff's mortgage account, submitted by BANA,

indicates that Plaintiff's military allotment became insufficient to cover all sums due under the Note and Deed of Trust. BANA's Account Records [125-4] at p. 5, Ex. C to Defs.' Mem. [126] in Supp. of Mot. for Summ. J.; Loan History Docs., Exs. F, L to Pl.'s Resp. [130]. BANA represents that Plaintiff's allotment became insufficient "due to the increases in amounts due for wind insurance coverage, hazard insurance coverage and local taxes." Defs.' Mem. [126] in Supp. of Mot. for Summ. J. at p. 13. A letter in BANA's records regarding Plaintiff's loan account indicates that BANA notified Plaintiff as early as October 2008, that his military allotment was less than his required monthly payment, and that failure to timely pay his mortgage loan in full would result in late fees and might affect his credit history. BANA's Account Records [125-4] at p. 5. These records further indicate that, throughout 2010, BANA informed Plaintiff, by numerous letters, that his account was past due. *Id*. Plaintiff does not deny that he received these letters.

Plaintiff has provided a copy of his credit report, which he contends supports his claim of wrongful credit reporting by BANA. Pl.'s Credit Report, Ex. B to Pl.'s Resp. [130]. Comparing the report with Plaintiff's loan history, the report appears to accurately reflect that Plaintiff's mortgage loan account was thirty days past due on five different occasions in 2010. *Id*. There is no evidence in the record to support Plaintiff's argument that BANA wrongfully or illegally reported his mortgage loan account as delinquent to credit reporting agencies. Any claims stemming from this allegation should be dismissed.

5.   Claim that BANA Did Not Timely Credit Payments

Plaintiff next contends that BANA did not timely apply his mortgage payments to his loan balance, and instead held his payments in a "side" account, in order to convert them for its own use, and for the purpose of imposing additional fees upon him. Pl.'s Sec. Am. Compl. [82] at p. 7; Pl.'s Resp. [130] at pp. 6, 10. According to the Deed of Trust:

> 1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. . . . Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but **Lender is not obligated to apply such payments at the time such payments are accepted**. **If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.**

Deed of Trust [125-2] at p. 3 (emphasis added).

BANA acknowledges that it "retained the military allotment payments until [Plaintiff] supplied the remaining sums due for his payments . . . ." Defs.' Mem. in Supp. of Mot. for Summ. J. [126] at p. 15. Pursuant to the terms of the Deed of Trust, BANA was within its rights to do so. Plaintiff's claim that BANA did not timely apply his payments and unlawfully held partial payments, should be dismissed.

> 6. <u>Claim that BANA Did Not Provide Requested Account History Information</u>

Plaintiff alleges in his Complaint that BANA violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), by "[n]ot providing requested ledger and escrow account information . . . ." Pl.'s Sec. Am. Compl. [82] at p. 7.  BANA's records indicate that BANA mailed Plaintiff detailed loan histories on January 13, 2009, August 11, 2009, February 9, 2010, March 4, 2010, July 14, 2010, November 15, 2010, June 29, 2011, September 8, 2011, and September 27, 2011. BANA's Account Records [125-4].  In his Response, Plaintiff admits that BANA supplied him with loan history documentation.  Pl.'s Resp. [130] at p. 12.  He maintains, however, that BANA "was negligen[t] and fraudulent . . . and [in] violation of RESPA," in doing so, because he requested his account history on October 29, 2010, and February 4, 2011, and BANA did not provide him the requested loan history until September 8, 2011.  *Id.* at pp. 12-13.  BANA's records, however, indicate that BANA mailed Plaintiff his loan history documentation on November 15, 2010, and June 29, 2011, as well as on September 8, 2011.

Plaintiff's admission that BANA provided him the loan history documentation that he requested belies his claim in the Complaint.  Plaintiff made no allegation in his Complaint that BANA acted unlawfully by responding to his requests for loan history documentation in an untimely manner.  This claim, raised for the first time in Plaintiff's Response, is not properly before the Court.  Even if it were properly pleaded, there is no evidence in the record that BANA was untimely in providing

Plaintiff with loan history documentation. To the contrary, the evidence reflects that Plaintiff requested his loan history documentation from BANA on numerous occasions, and that BANA provided Plaintiff with this documentation on at least nine occasions in a period of less than three years.

       7.     <u>Allegations Regarding Solicitation for Home Loan Modification</u>

With his Response, Plaintiff has submitted letters from BANA dated November 5, 2010, and December 27, 2010, wherein BANA informs Plaintiff that he may qualify for the federal government's Home Loan Modification Program. Letters [130-10], Ex. J to Pl.'s Resp. [130]. The December 27, 2010, letter indicates that Plaintiff expressed interest in this Program, but Plaintiff adamantly denies that he did. Pl.'s Resp. [130] at pp. 8-9. A letter in BANA's records dated January 24, 2011, reflects that it reviewed Plaintiff's loan and determined that he was not eligible for a modification under the Program, because he did not supply the documents requested in the earlier letters. BANA's Account Records [125-4] at p. 114.

Plaintiff did not allege in his Complaint that BANA unlawfully solicited him for participation in the Home Loan Modification Program. In his Response, he contends that BANA "wrongfully and fraudulently" solicited him, because he never requested information on this Program, and because his home mortgage loan was never past due. Pl.'s Resp. [130] at p. 9. He alleges that the Program is "a fraud and a scheme." *Id.* at p. 11. Because Plaintiff's allegations regarding the Home Modification Program were not raised in his Complaint, they are not properly before

the Court. Moreover, Plaintiff has offered no authority supporting his contention that his receipt of unsolicited letters regarding the Program is unlawful, nor has he provided evidence that he suffered damages as a result of receiving such letters.

### III. CONCLUSION

For the foregoing reasons, there is no genuine issue as to any material fact on Plaintiff's claims. BAC and BANA are entitled to summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [125], filed by Defendants Bank of America Corporation ("BAC") and Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("BANA"), is **GRANTED**. Plaintiff Joseph Davis Jr.'s claims against these Defendants are dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 11th day of January, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE